DAVID L. BRANSON, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent.
Branson v. Commissioner
Docket No. 16568-79.
United States Tax Court
T.C. Memo 1981-338; 1981 Tax Ct. Memo LEXIS 410; 42 T.C.M. (CCH) 281; T.C.M. (RIA) 81338; June 29, 1981
Bruce I. Hochman and Craig I. DeRoy, for the petitioner. Charles W. Jeglikowski, for the respondent. TANNENWALD
MEMORANDUM FINDINGS OF FACT AND OPINION TANNENWALD, Judge: Respondent determined a deficiency in petitioner's 1976 Federal income taxes in the amount of $ 1,546. In his answer to the petition filed in this case, respondent increased the deficiency to $ 1,822 and sought an addition to tax in the amount of $ 911 pursuant to section 6653(b) [1] for an underpayment due to fraud. Due to concessions by petitioner, *411 the only issue remaining is whether petitioner is liable for the section 6653(b) addition to tax. FINDINGS OF FACT Some of the facts have been stipulated and are found accordingly. Petitioner timely filed his Federal income tax return for the taxable year in issue with the Fresno Service Center of the Internal Revenue Service. The notice of deficiency and the increased deficiency introduced in respondent's answer were based upon the information contained in petitioner's returns. Petitioner filed his petition with this Court on December 4, 1979, and then on February 4, 1980, he filed with respondent an amended income tax return for the taxable year in dispute. Petitioner's amended return was computed in accordance with respondent's determinations. At the time he filed his petition in this case, petitioner resided in Tustin, California. Petitioner and his former wife, Wilmoth Jean Walke (Ms. Walke), were married on May 4, 1955. Marital difficulties induced petitioner to move out of the family residence during January 1976. On February 2, 1976, petitioner *412 instituted a proceeding for the dissolution of his marriage to Ms. Walke, and on March 2, 1976, petitioner and Ms. Walke executed a property settlement agreement in anticipation of divorce. On April 5, 1976, in interlocutory judgment of dissolution of marriage was entered by the Superior Court of California which inforporated the property settlement agreement, and on August 10, 1976, a final judgment of dissolution of marriage was entered. The property settlement agreement provided in part that petitioner assigned "all of his right, title and interest in * * * [a] 1971 Datsun 1200 Sedan, #LB110766198" [the Datsun] to Ms. Walke as her separate property. Sometime between November 1, 1976, and February 1, 1977, Ms. Walke accidentally drove the Datsun into the rear end of another automobidle, thereby injuring the front end of the Datsun. Immediately following the accident, Ms. Walke went to petitioner's residence and informed him of the collision. Ms. Walke used the Datsun until her accident as her general means of travel. She depended upon it to take her to and from work, and so after the accident, she had to obtain rides from friends and family members. Ms. Walke began *413 looking for a new car no later than February 2, 1977, and she purchased a new car on February 10, 1977. Even prior to the accident, Ms. Walke had desired to buy a new car because she was dissatisfied with the Datsun. Petitioner's original 1976 Federal income tax return included a casualty loss deduction from adjusted gross income in the amount of $ 723 (representing a loss of $ 823 less the statutory $ 100 floor, see section 165(c)(3)). Petitioner's amended Federal income tax return included the notation that "I feel the above amounts (* * * and Casualty Loss $ 723.00) are valid and proper deductions but elect not to claim them as deductions from adjusted gross income." Petitioner is an attorney licensed to practice law in Missouri and California. Petitioner has been employed by the Internal Revenue Service since 1965 and has been in a supervisory capacity since 1972. Petitioner knew when he filed his original 1976 Federal income tax return that, except in circumstances not presented herein, a casualty loss may only be claimed for the year in which the casualty occurred and may not be claimed with respect to property in which the taxpayer has no interest. Aside from the injury *414 to the Datsun, petitioner did not believe that he had incurred a casualty during 1976. OPINION As a result of petitioner's concessions, [2] the only issue for decision is whether petitioner is subject to the addition to tax for fraud under section 6653(b). The filing of a correct amended return does not preclude consideration of this issue. Stewart v. Commissioner, 66 T.C. 54 (1976). The issue is factual and is to be determined upon the basis of the entire record and respondent has the burden of proving the existence of fraud by clear and convincing evidence. Sec. 7454(a); Rule 142(b), Tax Court Rules of Practice and Procedure; Grosshandler v. Commissioner, 75 T.C. 1, 19 (1980). That burden may not be carried by the mere failure of the petitioner to contest or carry his burden of proof in respect of the underlying deficiency. Estate of Beck v. Commissioner, 5 T.C. 297, 363 (1971). Neither will fraud be imputed or presumed nor can a finding thereof rest on mere suspicion. Green v. Commissioner, 66 T.C. 538, 550 (1976), However, we are entitled to recognize that direct evidence of fraud is often not available *415 and that we may draw reasonable inferences from the record as a whole. Grosshandler v. Commissioner, supra.
The ultimate test is whether petitioner intended to evade taxes which he knew or believed to be owing. Danenberg v. Commissioner, 73 T.C. 370, 393 (1979). In this case, the application of that test turns upon whether petitioner owned the Datsun in 1976 (and, if he did not, whether he knew that to be the case) or, if he owned the Datsun, whether the casualty occurred in 1977 rather than 1976 (and, if it occurred in the latter year, whether petitioner also knew that to be the case). Some years ago, we observed that "the ultimate task of a trier of the facts" is "the distillation of truth from falsehood, which is the daily grist of judicial life" and that "[t]ruth itself is never in doubt, but it often has an elusive quality which makes the earch for it fraught with difficulty." See Diaz v. Commissioner, 58 T.C 560, 564 (1972). *416 In that case, our search was aided by an assist from the Almighty which enabled us to find the testimony of an 86-year old witness determinative of the issue to be decided (the ownership of a winning set of lottery tickets) because she was "[o]bviously closer than most to her Marker and face-to-face with her priest in the courtroom." See 58 T.C. at 565. Unfortunately, no such assist is available to us in the present case and we are remitted solely to the application of our worldly human--and necessarily fallible--talents in disposing of this case. We see no need to review in detail the evidence of record. To a large degree, it consists of contradictory and confusing testimony, and each witness's relationship with petitioner gave rise to an aura of prejudice which could have caused him (or her) to slant his (or her) testimony either for or against petitioner. With respect to the petitioner, who testified on his own behalf, our evaluation is that his testimony was at best disingenuous. [3] In sum, we cannot say that any of the witnesses were lying but neither are we convinced that they were telling the truth. *417 In light of the foregoing and applying the standards enunciated at the outset of our opinion, we conclude that, although we have our suspicions--and, indeed, strong suspicions--the respondent has failed to carry his burden of proof by clear and convincing evidence. Because the increased deficiency and the addition to tax for fraud were asserted by respondent in his answer (see footnote 2, supra) and because of petitioner's concessions, Decision will be entered for respondent in the amount of $ 1,546 set forth in the deficiency notice increased by the underlying deficiency of $ 276 set forth in respondent's answer or a total of $ 1,822. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect during the year in issue.↩
2. Because petitioner has agreed to respondent's determinations, it is of no consequence that an increase in deficiency was asserted by respondent in his answer. Compare Rule 142(a), Tax Court Rules of Practice and Procedure.↩
3. Indeed, the Court had concluded, at the close of respondent's case, that he had clearly failed to carry his burden of proof and it was petitioner's subsequent testimony that has given the Court pause in respect of that conclusion.↩